**FILED**
Jul 11 2023
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY  s/ melindajwilliams  DEPUTY

Melvin Marinkovic  
Box 80715  
San Diego, CA 92138  
(315) 880-9521  

July 11, 2023

Plaintiff  
*Pro Se*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

**'23CV1279 JO   BGS**

| | |
|---|---|
| MELVIN MARINKOVIC ) | 23-CV - |
| ) | |
| Plaintiff, ) | |
| ) | COMPLAINT |
| v. ) | FOR BREACH OF THE |
| ) | IMPLIED COVENANT OF GOOD |
| KIMBERLY P. COCKERHAM, ) | FAITH AND FAIR DEALING |
| 3590 Camino Del Rio North #100 ) | AND |
| San Diego, CA. ) | FOR SPECIFIC PERFORMANCE |
| ) | AND |
| ) | FOR VIOLATION OF §17200 |
| ) | OF THE CALIFORNIA |
| ) | BUSINESS AND PROFESSIONS |
| ) | CODE |
| ) | AND |
| ) | FOR BREACH OF FIDUCIARY |
| ) | DUTY |
| ) | AND |
| ) | FOR INTENTIONAL INFLICTION |
| ) | OF EMOTIONAL DISTRESS |
| ) | |
| Defendant. ) | JURY DEMANDED |

Plaintiff avers and states as follows.

## $45 BILLION JURISDICTION AND SAN DIEGO VENUE

1. Diversity jurisdiction is satisfied because plaintiff is domiciled in New York, has NY bank accounts, a NY permanent residence, and intends to return to NY when his medical treatments and litigation here are concluded. Doctor Cockerham is domiciled in California and works here full time.

2. Amount in controversy is satisfied because plaintiff does not provide a total damages claim to reach the high amount required to be permitted to have a trial in federal court by guess-work, but instead, he shows amounts he will now lose in other law suits in which the good doctor would have testified under the agreement, and also jury awards given in other suits that are similar or analogous, to show juries have made awards of this amount claimed here because they have done so elsewhere.

3. Specifically, in Trans. Health Mgmt. v. Webb, 132 So.3d 1152, 1154 (Ct. App. Fla. 2013) the jury awarded the victim $100 million in compensatory damages and $900 million in additional damages from medical negligence action resulting in the loss of his legs which left him half-a-man for the rest of his life.

4. Plaintiff suggests this is an analogous case because the damages he claims in a present action at Marinkovic v. Hazelwood, in Ohio for personal injuries and the damages he claims in another action at Marinkovic v. Liberty

Mutual, in San Diego for personal injuries, and the damages he claims at Marin v. ETS, in Connecticut, demand over $44 billion in compensatory damages plus punitive damages from the loss of the use of several body organs has left him as half-a-man and plaintiff is now likely to lose all of those cases because the defendant has unilaterally breached the agreement she made on April 19, 2023 to be plaintiff's expert medical witness and notified plaintiff on July 7, 2023 that she changed her mind and refuses.

5. Similarly, in <u>Reckis v. Johnson & Johnson</u>, 471 Mass. 272, 28 NE 3d 445, 454 (2015) the jury awarded $50 million award for compensation for loss of wife. Plaintiff submits this is also analogous because the damage to plaintiff's organs caused his fiancee to quit, and he would have recovered at least $50 million in a jury award for that loss because the injuries to plaintiff bar him from marrying not just one woman, but anyone for the rest of his life.

6. Similarly, in <u>Boeken v. Philip Morris USA, Inc.</u>, 48 Cal.4th 788 (2010) the jury awarded $5 million in compensation for organ damage from smoking and $3 billion in additional damages to punish the company that caused it. This is analogous because it suggests Melvin would also have recovered $3 billion in additional damages against the defendants in those actions but because Dr. Cockerham has withdrawn, he will now lose all of his actions.

7. Plaintiff also claims $5.25 million in compensation and $50 million in punitive damages for loss of a career from each of the ETS, and LSAT and MCAT and colleges that refused to grant him accommodations under federal disability statutes to compensate for his eye injuries and which amount he would have recovered from a jury award if Dr. Cockerham had not unilaterally dropped plaintiff for no reason whatsoever.

8. He also claims $44.33 billion in punitive damages against this defendant, which is 33% of the net worth of LIBERTY Mutual of $133.64 billion as reported in https://fortune.com/company/liberty-mutual-insurance-group/ since he would have recovered that amount in a jury award and the California Supreme Court permits this for punitive damages against a corporation in <u>Adams v. Murakami</u>, 54 Cal.3d 105,112 (1991) (courts may allow a jury award for punitive damages up to 33% of the net worth of the defendant).

9. Therefore, diversity jurisdiction is present under 28 U.S.C. §1332.

## COMMON ALLEGATIONS

10  Defendant was a treating eye specialist for plaintiff for the past several years.

11. On about April 19, 2023, defendant agreed to sign a letter supporting plaintiff's claims in his litigation against the testing companies, and did so, and to

testify for plaintiff that plaintiff's eye injuries were caused by a car accident in 2018 which is the subject of the law suits, and that the testing company, ETS that administers the GRE refused to grant the disability accommodation that plaintiff required because of his eye injuries sustained in 2018.

12. However, that testimony alone would have allowed plaintiff to use it in the other law suits as well.

13. Plaintiff agreed to pay whatever her fee for the court appearance although she was not certain she would charge anything, and informed her the court had approved appearance by zoom, so she need not go anywhere.

14. Defendant stated she would inform plaintiff what her charge would be after he gave her his trial date. Plaintiff gave her his trial date within days after the Ohio set that date and the doctor did not complain.

15. Shortly after April 19, 2023 letter of support, the defendant provided all her records for plaintiff to submit to the court, and plaintiff tried to reach her to ask for a separate medical report, but he was informed she was away and could not get to it.

16. Plaintiff was forced, however, to file a designation of experts under Federal Rule 26 by April 28, or lose the chance to have any medical expert and lose his case. So because Dr. Cockerham was not available, Melvin drafted what he expected the doctor to testify to under Rule 26 (2)( c ) and he then submitted to

opposing counsel by the end of the discovery period June 28, 2023, the doctor's support letter and full medical records, to keep his case alive.

17. Plaintiff asked the doctor in messages if he could add something to her letter but she did not answer so he added nothing, and submitted to the doctor his report based on what he expected the doctor to say.

18. At no time did the doctor disagree, or protest from what Melvin provided to the opposing counsel and to the doctor.

19. On July 7, 2023, the doctor's staffer called to inform plaintiff that the doctor had finally examined what Melvin gave her and decided not to appear in his court action at all. Plaintiff spend money to call on July 7 and July 10 and July 11 to try to reach other doctors of defendant's speciality to try to replace her, with no success on the hope that he could make a motion in the federal court to replace that doctor. But he files now because he cannot afford to wait several more weeks to see if he can find anyone. And the emotional stress and mental pressure that surprise imposed on Melvin has made his muscle relaxant pills that help him to get to sleep, useless because he cannot stop worrying now what will become of him since he will now lose all his chances to recover a jury award that could pay for treatments and tests for his 14 medical conditions to avoid an early death. He has not been able to sleep well, and it is illegal for his other treating doctor to prescribe stronger medication to sleep as it may stop his heart.

# I.

# FIRST CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

20. All allegations above are incorporated into this cause of action.

21. In California, "[a] cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." CDF Firefighters v. Maldonado, 158 Cal.App.4th 1226, 1239, 70 Cal.Rptr.3d 667 (Cal.App.2008).

22. Element (1) is proved above at allegations ¶¶ 11-15.

23. Element (2) is proved at allegations ¶¶ 15-17.

24. Element (3) is proved at allegation ¶ 19.

25. Element (4) is proved at allegations ¶¶ 2-8.

26. On this basis the doctor and plaintiff had an enforceable unwritten contract, based on course of dealing.

27. Once plaintiff made the designation of this doctor for his expert, he did not have the time nor power to change the federal court deadline so he could locate someone else. Melvin actually did make a motion earlier to extend the deadlines so he could find other experts but was denied. He already lost a prior

case in the same Ohio court for the same reason. Therefore, he had no power to "mitigate" that loss because by the time the doctor gave her notice it was well past the deadline to designate his expert.

28. The doctor's sudden refusal, therefore, was a surprise complete breach.

29. California law imposes a covenant of good faith and fair dealing in every agreement.

30. That covenant requires the parties to try to keep the agreement viable, and imposed on the doctor to explain any concerns she may have had with her own letter or to explain that because she is one of the foremost eye experts in the world and highly sought in international lectures, she had a duty to explain a sudden scheduling problem so that plaintiff could ask the judge to accommodate it.

31. The good doctor did not. She made no attempt at all to allow Melvin to adjust that trial date. She just "dropped him".

32. In doing so, she ended his law suit because he cannot testify as a physician and he cannot now ask anyone else to step in to help. It took him 3 full years just to find this eye doctor who would help him. His trial is set for October. That is 3 months. He does not have another 3 years.

33. The loss of all three current actions, therefore, was caused 100% by the doctor's surprise refusal. In other words, her to take any step to allow Melvin to adjust to some schedule conflict was a breach of the covenant of good faith and

fair dealing, and was also the actual, and substantial and proximate cause of the loss of the 3 law suits.

34. The damages award that a jury may make is based on what plaintiff could have recovered if the agreement was fully performed, which is $44 billion.

35. WHEREFORE, plaintiff seeks and is entitled to an award from a jury of $44 billion against the defendant and her malpractice insurers.

## II.

### SECOND CLAIM FOR SPECIFIC PERFORMANCE

36. All allegations above are incorporated into this cause of action.

37. To establish a right to specific performance, the plaintiff must establish: (1) the contract terms are sufficiently definite; (2) consideration is adequate; (3) there is substantial similarity of the requested performance to the contractual terms; (4) there is mutuality of remedies; and (5) plaintiff's legal remedy is inadequate. Blackburn v. Charnle, 117 Cal. App. 4th 758, 766 (2004)

38. Element (1) is proved above at allegations ¶¶ 11-15.

39. Element (2) is proved at allegations ¶¶ 13.

40. Element (3) is proved at allegation ¶ 11.

41. Element (4) is proved at allegations ¶¶ 11, 13.

42. Element (5) is proved at allegations ¶¶ 32. It is also suggested by the fact that Dr. Cockerham is a sole-practitioner, and her malpractice insurer is not likely to have a net worth to be able to pay $44 billion. Therefore, it is too late to mitigate damages since deadlines have passed and the remedy of damages to cover all those cases is fanciful, or at best highly unlikely even if Melvin's evidence proves a clear and unwarranted anticipatory repudiation which cannot be corrected.

43. WHEREFORE, plaintiff is entitled to an order for full performance, requiring defendant to perform as agreed, and to talk to Melvin if she has a new schedule conflict to allow him to make motions to the federal courts to try to accommodate them.

## III.

## THIRD CLAIM FOR VIOLATION OF §17200 OF THE CALIFORNIA BUSINESS AND PROFESSIONS CODE

44. All allegations above are incorporated into this cause of action.

45. This statute is called the Unfair Competition Law, and allows individual victims to compel the businesses to perform as they agreed, to avoid practices that are unlawful, unfair or fraudulent. Korea Supply Co. v. Lockheed Martin Corp., 29 Cal.4th 1134, 1150 (2003).

46. A victim must allege the loss of money or property to have standing to compel the business to perform, by injunction. Plaintiff alleges this actual loss at ¶ 19, and alleges he will continue to spend money to call physicians to try to remedy, knowing it is unlikely that his judges will accommodate his doctor.

47. This doctor engages in unfair medical practice by representing to her patients that she will help them in specific ways, and they changing her mind.

48. Because the doctor was quick to drop Melvin when her commitment became inconvenient, that conduct appears to be a regular event with this doctor.

49. It appears, moreover, that because she waited so long to contact Melvin and to give him an exact fee charge, that she was "hedging her bets" or waiting to see if she would have conflicting professional engagements pop-up that would conflict so she could then "back-out" based on excuses that she has not yet articulated.

50. Because plaintiff believed her and reasonably relied on her commitment because a patient is entitled to rely on his doctor's statements because they affect his life, and because he has now been hurt by it, she has effectively deceived Melvin even if it was not her intent and, therefore, other members of the public who become her patients are also likely to be deceived the same way.

51. Her surprise refusal to execute the rest of the contract after providing plaintiff with a signed letter of support and a promise to testify, was an unfair

business practice as well as an improper medical one.

52. WHEREFORE, plaintiff seeks and is entitled to an injunction to stop the good doctor from continuing to refuse to help Melvin by testifying in good faith for him at his October 2023 trial.

## IV.

## FOURTH CLAIM FOR BREACH OF FIDUCIARY DUTY

53. All allegations above are incorporated into this cause of action.

54. To prove a breach of fiduciary duty, a plaintiff must show: "(1) the existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach." Jameson v. Desta, 215 Cal. App. 4th 1144, 1164, 155 Cal.Rptr.3d 755 (2013).

55. Element (1) is proved at ¶¶ 10-11 because a physician has a fiduciary duty to her patient.

56. Element (2) is proved at ¶¶ 48-51, in the manner of the doctor failing to inform her patient that despite her commitment to testify for Melvin in court, she would drop that agreement in a second if she is invited to a professional event that could bring her economic gain and cement her status as the world's leading physician for neurology and eye conditions.

57. Element (3) is proved at ¶¶ 3-8.

58. That breach was the actual, or substantial or proximate cause of the losses Melvin now faces in all of his law suits described in ¶¶ 3-8.

59. WHEREFORE, Melvin seeks and is entitled damages against the doctor, to be paid by her medical malpractice insurer, in the amount of $44 billion.

## V.

## FIFTH CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

60. All allegations above are incorporated into this cause of action.

61. Intentional infliction of emotional distress requires (1) "outrageous" conduct by the defendant, (2) that the defendant intend to cause (or recklessly disregard the probability of causing) emotional distress, (3) severe emotional distress and (4) causation. Nally v. Grace Community Church, 47 Cal.3d 278, 300 (1988).

62. Element (1) is proved above at allegations ¶ 3-8, and 19 because committing to a patient to help him recover in litigation from the losses of his medical problems, knowing he is trusting his doctor with his life, and then dropping him and destroying all his chances on a whim is conduct so extreme that it exceeds all bounds usually tolerated in a civil society.

39. Element (2) is proved at allegations ¶ 19, because it shows a surprise which is a reckless disregard for whether that surprise will cause emotional distress.

40. Element (3), actual severe emotional distress, is proved at allegation ¶ 19.

41. Element (4), causation, is also proved at allegation ¶ 19 because he can no longer function competently from lack of sleep, cannot think straight to add to his inability to see straight, appears to lose everything he eats from diarrhea because he cannot sleep and cannot force himself to sleep. And he cannot go to his primary physician for fear they will put him back on a watch list for death. He is trying hard not to give up but does not actually remember fully what that means because this doctor has almost single-handedly destroyed his future.

42. WHEREFORE, WHEREFORE, Melvin seeks and is entitled damages against the doctor, to be paid by her medical malpractice insurer, in the amount of $44 billion, or in the very least, injunctive relief to compel her to provide a medical report for his cases, and to appear and testify for them, or to find a colleague who will do the same testifying to get this doctor out of the mess she created for herself and for her patient.

These allegations are verified.

DATED: July 11, 2023                                    _M. M.___